**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**Teresea O'Brien,** *et al.***,**

       **Plaintiffs,**

                                                          **Case No. 2:04-CV-00085**
**v.**                                                 **JUDGE SMITH**
                                                 **Magistrate Judge King**

**Ed Donnelly Enterprises, Inc.,** *et al***.,**

       **Defendants.**

**OPINION AND ORDER**

Plaintiffs, Teresea O'Brien and Dallas Prater, bring this action against Defendants, Ed Donnelly and Ed Donnelly Enterprises, Inc.  Plaintiffs allege they were not paid the minimum hourly wage and overtime compensation due to them in connection with their employment at two McDonald's facilities in Bellefontaine, Ohio in violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA").  Plaintiffs also assert state law claims under O.R.C. Chapters 4111 and 4113, and claims under the common law of Ohio.  This matter is currently before the Court for consideration of a partial motion for summary judgment by Plaintiffs (Doc. 133) and a motion for summary judgment by Defendants (Doc. 135).  Also before the Court are related motions to strike filed by both Plaintiffs (Doc. 146) and Defendants (Doc. 142).  For the reasons that follow, the Court **DENIES** Plaintiffs' Motion to Strike (Doc. 146), **GRANTS** Defendants' Motion to Strike (Doc. 142), **DENIES** Plaintiffs' Motion for Partial Summary Judgment (Doc. 133), **GRANTS** summary judgment to Defendants on the sole federal claim involved in this case, and **DISMISSES WITHOUT PREJUDICE** the remaining state law claims (Doc. 135).

## I.  FACTUAL BACKGROUND

Plaintiffs Teresea O'Brien and Dallas Prater  (collectively "Plaintiffs") are former employees of two McDonald's facilities in Bellefontaine.  Defendants Ed Donnelly and Ed Donnelly Enterprises, Inc. ("Defendants") owned and operated the at-issue McDonald's facilities.      Plaintiff O'Brien worked from February 16, 2002 through March 30, 2002, as an opening shift swing manager at the North store.  She earned an hourly rate of $7.00 per hour.  As an opening shift swing manager, Plaintiff would perform opening job tasks such as turning on lights, turning on computers, warming up the grills and fryers, readying the cash registers and preparing salads and breakfast foods.  Plaintiff Prater worked from September 11, 2002 through March 3, 2003, as an opening shift crew member and maintenance man at the North and South stores.  He earned an hourly rate between $7.00 and $7.50.

Defendants' employees were paid per their hourly rate based on the reports generated by Defendants' computer.  The computer's timekeeping system tracks employees' punch-in and punch-out times, including breaks and lunch.  Defendant Donnelly and Defendants' restaurant managers have access to the computerized timekeeping system through use of a password and can modify the time punch records.  Modifications to the time punch records are recorded by the computer and reflected in the punch change approval reports.

Plaintiffs allege that, while working for Defendants, they were not paid all of the regular wages and overtime pay they were due under federal and Ohio law.  Specifically, Plaintiffs allege that Defendants "intentionally altered the hourly time records pertaining to Plaintiffs' actual hours of work in order to reduce the number of Plaintiffs' reported hours and in order to pay Plaintiffs less in wages and/or overtime than they were entitled to receive." (Am. Compl. ¶¶ 16-17).  In addition, at the summary judgment stage, Plaintiffs have advanced a new theory of

2

recovery.  Plaintiffs claim that Defendants failed to pay them wages owed for time they worked "off the clock."

Defendants have filed a motion for summary judgment, and Plaintiffs have filed a motion for partial summary judgment.  Both parties have filed motions to strike.  All motions have been fully briefed and are ripe for review.

## II.  DISCUSSION

As a preliminary matter, this Court will first address the pending motions to strike.  Next, the Court will consider Plaintiffs' motion for partial summary judgment and Defendants' motion for summary judgment.

### A.  Defendants' Motion to Strike the Affidavits of Teresea O'Brien and Dallas Prater and Exhibits 6 and 7 (Doc. 142)

Defendants ask the Court to strike paragraphs 6-11 of the Affidavit of Teresea O'Brien ("O'Brien Affidavit"), paragraphs 6-16 of the Affidavit of Dallas Prater ("Prater Affidavit"), and Exhibits 6 and 7 to Plaintiffs' Motion for Partial Summary Judgment, on the grounds that the statements therein are inconsistent with prior deposition testimony, are not made with personal knowledge, are inadmissible hearsay, and are otherwise inadmissible. (Defs.' Mot. to Strike at 1).

#### 1.  O'Brien Affidavit

Defendants ask the court to strike paragraphs 6-11 of the O'Brien Affidavit on the grounds that the statements contained therein are inadmissible contradictions of O'Brien's prior deposition testimony. (Defs.' Mot. to Strike at 1).

The at-issue paragraphs of the O'Brien Affidavit provide:

6.  Throughout my employment with Defendants, as an opening shift swing

3

> manager, I routinely reported to work for Defendants at the North store at
> 4:30 a.m. on weekdays and Saturdays. And, when I worked on Sundays, I
> routinely regularly reported to work at 5:30 a.m.
>
> 7.      I was required to report for work at these early times so that I, and other
>         crew members at the North store, could perform necessary tasks to open
>         the restaurant and begin serving food to customers at the time the North
>         store when it opened to the public.
>
> 8.      These opening job tasks included turning on the lights, turning on the
>         computers, warming up the grills and fryers, turning on and placing
>         drawers in each of the five cash registers and preparing salads, yogurt
>         parfaits and breakfast foods.
>
> 9.      Even though I was required to report to work at 4:30 a.m. during the week,
>         and 5:30 a.m. on Sundays, Mr. Donnelly instructed me not to clock in on
>         the cash register until closer to 5:00 a.m., and 6:00 a.m., on Sundays. And,
>         I followed Mr. Donnelly's instruction in this regard.

(O'Brien Aff. ¶¶ 6-9).

Defendants characterize this portion of the O'Brien Affidavit as completely contradicting

her sworn deposition testimony.  Consequently, Defendants argue that this Court should

disregard those portions.  To support their arguments, Defendants cite to the deposition transcript

where Plaintiff O'Brien admits that she would clock in first, before performing any duties.

(Defs.' Mot. to Strike at 2-4; Def's Reply in Support of Mot. to Strike at 1-2).  Defendants also

cite to Plaintiff O'Brien's statement in the deposition that she was instructed to come in an hour

before the restaurant opened. (Defs.' Mot. to Strike at 2-4; Def's Reply in Support of Mot. to

Strike at 1-2).  Based upon prevailing Sixth Circuit precedent, the Court agrees with Defendants

that these contradictory statements should be stricken.

Federal Rule of Civil Procedure 56(e) sets forth three mandatory requirements for

affidavits that are used in support of, or in opposition to, a motion for summary judgment.  The

rule requires that such affidavits "shall be made on personal knowledge, shall set forth such facts

4

as would be admissible in evidence, and shall show affirmatively that the affiant is competent to

testify to the matters stated therein." Fed. R. Civ. P. 56(e).  "An affidavit that does not satisfy the

requirements of Rule 56(e) is subject to a motion to strike." *Reddy v. Good Samaritan Hosp. &*

*Health Ctr.*, 137 F.Supp. 2d 948, 954 (S.D. Ohio 2000) (*quoting Collazos Cruz v. United States*,

1997 WL 377037 at *2 (6th Cir. 1997).  In addition, the Sixth Circuit has consistently found that

"[a] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for

summary judgment has been made, that essentially contradicts his earlier deposition testimony."

*Penny v. Untied Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997); and *Reid v. Sears, Roebuck &*

*Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *accord Aereal, S.R.I. v. PCC Airfoils, LLC*, 448 F.3d 899

(6th Cir. 2006); *Lockard v. Generals Motors Corp.*, 52 F. Appx. 782, 788-89 (6th Cir. 2002);

*Smith v. Consolidated Rail Corp.*., 1996 WL 366283, at *4 (6th Cir. 1996); and *Rosinski v.*

*Electronic Data Systems Corp.*, 1991 WL 105747, at *6 (6th Cir. 1991).

As Defendants point out, Plaintiff O'Brien *twice* testified that the first thing she did when

she walked into the restaurant was clock in.  First, when she had her deposition taken in *Rogan v.*

*Ed Donnelly Enterprises*, Case No. C2-04-085 (*Rogan* O'Brien Depo. at 45-46), and again in her

deposition in this case:

> Q.      . . . [T]he first thing you would do is you'd clock in at the registers,
>          correct?
>
> A.      Yes.

(O'Brien Depo. at 37).  Plaintiff O'Brien explained that she would "[p]oke in [her] number and

then – [she] had to turn on the lights so [she] could see." *Id*.

Seeking to save these portions of the O'Brien Affidavit, Plaintiffs argue that there is no

contradiction and cite to testimony given by Plaintiff O'Brien stating that she had performed

work tasks before clocking in based upon Ed Donnelly's instructions to her. (Pls.' Memo. in Opp. to Defs.' Mot. to Strike at 5). Defendants counter by pointing out that the testimony "was given by O'Brien *after* she had already testified under oath twice to the contrary, *after* consultation with her lawyer, and upon questioning from her own lawyer at her deposition. (Defs.' Reply in Support of Mot. to Strike at 3). Defendants further argue that "[t]his belated testimony—given with assistance of counsel—is no different from the submission of an inconsistent affidavit. *Id.* To support their position Defendants rely on *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162 (7th Cir. 1995). In *Bank of Illinois,* the court held that deposition testimony that contradicted prior statements made under oath in a judicial proceeding was ineffective to preclude summary judgment. *Id.* at 1168. The court reasoned that, "[i]f such contradictions were permitted . . . the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut." *Id.* at 1168-69 (quotations omitted).

The essential question Plaintiffs' argument poses under *Reid* is whether there is a compelling reason to allow deposition testimony that conflicts with prior testimony, where such conflicting testimony clearly would not be allowed if it were contained in an affidavit. Answering that question requires examining why contradictory affidavits are disallowed. As explained in both *Reid* and *Bank of Illinois*, the prohibition on contradictory affidavits is designed to preserve the critical role summary judgment plays in modern federal jurisprudence: "screening out sham issues of fact." *Reid*, 790 F.2d at 460. Where the submission of contradictory deposition testimony would defeat this purpose, then, a court should disallow such testimony. Under the Federal Rules of Civil Procedure, plaintiffs are given considerable freedom to craft their suit. Accordingly, when a plaintiff fails to create a genuine issue of material fact

essential to his or her claim, that plaintiff is not allowed to take a second bite of the apple after a motion for summary judgment.

In the instant case, Plaintiff O'Brien twice testified—once during deposition in the *Rogan* case, and once during deposition in the instant case—that the first action she took upon arriving at work was clocking in. (*Rogan* O'Brian Depo. at 45-46; O'Brien Depo. at 37).  Plaintiff O'Brien's subsequent testimony that Ed Donnelly told her to clock in half an hour late directly conflicts with her two prior statements.  The fact that Plaintiff O'Brien twice stated that she clocked in before starting work, and only once stated that she performed work before clocking in is of only minor importance.  It is more than simple arithmetic that convinces this Court that Plaintiff O'Brien's later conflicting testimony should not be allowed.  Plaintiff O'Brien's testimony during deposition in the instant case—at a new time, in a new place, in a new action, under circumstances removed from her prior testimony in the *Rogan* case—serves as an independent reaffirmation of the testimony she originally provided during deposition in *Rogan*. It is this entirely consistent reaffirmation of her testimony in *Rogan* that convinces this Court that Plaintiff O'Brien's subsequent testimony looks like a discrepancy that creates a "transparent sham" and not a discrepancy that creates "an issue of credibility . . . or go[es] to the weight of the evidence." *Bank of Illinois* at 1169-70.  Accordingly, Defendants' Motion to Strike is well-taken with respect to the conflicting portions of the O'Brien Affidavit.

### 2.    Prater Affidavit

Defendants ask the court to strike portions of the Prater Affidavit on the grounds that it contains inadmissible hearsay, violates the best evidence rule and is inconsistent with his prior testimony. (Defs.' Mot. to Strike at 4).  The Court examines each of Defendants' arguments in turn.

7

## a. Inadmissible Hearsay

Defendants argue that this Court should disregard paragraphs 6 though 9 of the Prater Affidavit because those paragraphs contain attestations concerning a claim based on the contents of his discarded ledger which amount to inadmissible hearsay. (Defs.' Mot. to Strike at 5-6). Those paragraphs state:

> 6. Throughout my employment with Defendants, I often noticed significant discrepancies on my paycheck as compared with the actual number of hours I worked for Defendants.

> 7. At the time I worked for Defendants, I wrote down the number of hours I worked in a ledger to compare with my paychecks. And, on at least four occasions, I noticed that my paychecks did not reflect all the hours I had noted working in my ledger.

> 8. As a result, I complained to Chad Totche, the restaurant manager at the North store, on at least two occasions about the apparent shortages in my pay.

> 9. On those occasions, Mr. Totche told me that he would look into the pay discrepancy and get back to me, or words to that effect. But, Mr. Totche never did follow up with me.

(Prater Aff. ¶¶ 6-9).

Inadmissible hearsay cannot be considered on a motion for summary judgment. *See* Fed. R. Evid. 802; *see also*, *e.g.*, *The Daily Press, Inc. v. U.P.I.*, 412 F.2d 126, 133 (6th Cir. 1969); *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999); *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 620 (6th Cir. 2003).  The Federal Rules of Evidence defines "Hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

Plaintiff Prater claims that the reason he believes he may have been underpaid is that he

remembers comparing his pay stubs to the ledger he was keeping and the two did not always match. (Prater Depo. at 54-55; Prater Aff. ¶ 7).  Plaintiff Prater testified that, without his ledger, he does not know whether he worked overtime in any given week, and he has no recollection of when he worked on any given day. (Prater Depo. at 83, 98).  Finally, Plaintiff Prater testified that he cannot identify any overtime for which he claims he was not paid without referencing the ledger. (*Id*. at 79-80).  Thus, his testimony that he was underpaid is based entirely on his recollection of the information contained in the personal ledger.  In 2003, however, Plaintiff Prater threw away his ledger and pay records. (*Id*. at 44, 65).  Consequently, Defendants argue that any testimony about the information stated in the ledger amounts to inadmissible hearsay. (Defs.' Mot. to Strike at 5).

Plaintiffs argue that the testimony is not hearsay because it "does not involve a statement of any kind, in or out of court," but instead "merely describes the actions he personally took in the past." (Pls.' Mem. in Opp. to Defs.' Mot. to Strike at 9).  The Court disagrees.

First, the testimony regarding the ledger "involves a statement."  Fed. R. Evid. 801(a) defines "statement" as "an oral or written assertion . . . ."  Plaintiff Prater described the ledger as his statement at the time of the number of hours he believed he worked each day.  (Prater. Depo. at 45).  Plaintiff Prater now states that the assertions in his discarded ledger are more accurate than Defendants' time records, basing his claim of underpayment on the ledger's assertions. Second, the Prater Affidavit does not, as Plaintiffs' suggest, merely state that a ledger was kept. Instead, it seeks to attest to the contents of the ledger, *i.e.* that the number of hours written in the ledger were different from the number of hours reflected on the Defendants' time and pay records.  The fact that Plaintiff Prater kept a ledger is not hearsay; however, testimony about what is stated in the ledger is hearsay.

9

Accordingly, the Court can consider the statements to show that Plaintiff Prater created a ledger. The Court, however, will disregard Plaintiff Prater's attestations regarding the contents of the ledger.

### b.     Violation of the Best Evidence Rule

Defendants argue that this Court should disregard paragraphs 10 though 13 of the Prater Affidavit because they contain attestations concerning Plaintiff Prater's scheduled starting times, which are inadmissible because it violates the Best Evidence Rule, Federal Rule of Evidence 1002. (Defs.' Mot. to Strike at 6-7). Those paragraphs state:

> 10.     As an opening shift crew member, I routinely reported to work for Defendants at the North store at 4:00 a.m.
>
> 11.     When I reported to work at 4:00 a.m., I often times had to wait for an opening shift manger - including Chad Totche, Angela Tall and David Clark - to arrive at the North store to open the restaurant.
>
> 12.     Once an opening shift manager had arrived at the North store, I would begin working right away without clocking in because the opening shift managers told me they would clock me in at 4:00 a.m., which was the time I arrived at the North store.
>
> 13.     In this lawsuit, Defendants produced some of my timekeeping records relating to showing the times that restaurant managers clocked me in on Defendants' computer system. However, my beginning work times, as entered by the restaurant managers on Defendants' computer and reflected on Defendants' timekeeping records, are later than the time I usually reported to work for Defendants, which was 4:00 a.m.

(Prater Aff. ¶¶ 10-13).

Fed. R. Evid. 1002 provides that, "[t]o prove the content of a writing . . . the original writing . . . is required . . . ." "A person may not testify, therefore, about the contents of a document if the document itself is available. In such circumstances, the document speaks for

itself." *Freitas v. Emhart Corp.*, 715 F.Supp. 1149, 1151 (D.Mass. 1989) (granting motion to strike interrogatory answer expressing an opinion as to the content of records). *See also Teamsters Loc. Union No. 42 v. Supervalu, Inc.*, 212 F.3d 59,69 (1st Cir. 2000) ("Generally speaking, documents are the best evidence of their contents.").

Defendants point out that the specific times at which Plaintiff Prater was required to report to work are reflected in Defendants' written work schedules. (Defs.' Mot. to Strike at 7 *citing* Donnelly Aff. ¶ 2). Plaintiff Prater testified that he always worked in accordance with the schedule. (Prater Depo. at 73). And, contrary to Plaintiff Prater's assertion that he "regularly" began work at 4:00 a.m., *none* of the written work schedules produced in this case concerning Plaintiff Prater's first period of employment (September through December 2002) reflects a starting time of 4:00 a.m. (Donnelly Aff. ¶ 9, Ex. 4). The written schedules *do* reflect that Plaintiff Prater often started work at 4:00 a.m. during his *second* period of employment (February through March 2003); however, Plaintiff Prater is not alleging any underpayment during that period. (See Pls.' Mot. for Summ. J. at 5, n.5). Defendants therefore argue that "Mr. Prater's attestations regarding his starting times necessarily constitute attempts to prove the contents of the work schedules he followed." (Defs.' Mot. to Strike at 7).

Plaintiffs counter that Fed. R. Evid. 1002 does not apply because it is not the contents of the written record itself that Plaintiffs seek to prove. (Pls.' Mem. in Opp. to Defs.' Mot. to Strike at 12). Plaintiffs correctly point out that Fed. R. Evid. 1002 is not applicable where the proponent is not seeking to prove the contents of the writing. *See* Advisory Committee Notes to Fed. R. Evid. 1002 ("Application of the rule requires a resolution of the question whether contents are sought to be proved. Thus an event may be proved by nondocumentary evidence, even though a written record of it was made."). Plaintiffs conclude that the Rule is inapplicable

11

here because Mr. Prater's testimony is not offered to prove the contents of the schedule, but instead is offered to establish his actual hours of work, and to demonstrate that Defendants' timekeeping records are inaccurate. (Pls.' Mem. in Opp. to Defs.' Mot. to Strike at 12).  In other words, Plaintiffs assert that the Prater Affidavit is not disputing the content or accuracy of the schedules, but instead it attests to when Plaintiff Prater reported to work.

Plaintiffs' argument, however, ignores Plaintiff Prater's prior deposition testimony in which he testified that he always worked in accordance with the written schedules. (*See* Prater Depo. at 73).  If Plaintiff Prater always reported to work in accordance with the written schedules, the best evidence of when Plaintiff Prater reported to work on any given day is in the written schedule for the day.  Consequently, Fed. R. Evid. 1002 operates to bar testimony that Plaintiff Prater's scheduled start time was anything other than what is presented in the written schedules.

Alternatively, this testimony is barred on the grounds that the statements therein are inconsistent with prior deposition testimony. *See* discussion *supra* at II.A.1.  Plaintiff Prater testified that he always reported to work in accordance with the written schedules (*See* Prater Depo. at 73).  The written schedules reflect that Plaintiff Prater was never scheduled to begin work at 4:00 am during his first period of employment with Defendants.  Accordingly, Plaintiff Prater's attestations that he routinely reported to work at 4:00 a.m. are inadmissible contradictions of his prior deposition testimony.

### c.    Subsequent Inconsistent Affidavits

Defendants ask the Court to strike paragraphs 15 and 16 of the Prater Affidavit on the grounds that the statements therein are inadmissible contradictions of Plaintiff Prater's prior deposition testimony. (Defs.' Mot. to Strike at 8).  Those paragraphs state:

15.     On approximately nine occasions, I arrived for work at the North store in the morning and was instructed by one of the North store managers that I was needed to work at the South store because it was short staffed.  Then, on thee [sic] occasions, I traveled to the South store to work a shift as a grill cook.  But, I did not clock in at the South store to record my hours of work.

16.     Instead, I was told by the South store managers that one of the North store managers would clock me in and out at the North store.  However, none of the records Defendants produced in this lawsuit show any of my work hours at the South store, which averaged ten hours per shift.

(Prater Aff. ¶¶ 15-16).

Plaintiff Prater, in his deposition, admitted that he has no independent recollection of when he worked or of how much time he worked on any given day. (Prater Depo. at 83, 98).  He also admitted that he has no knowledge of ever having worked off the clock at the South store. (*Id. at* 109).  Finally, Plaintiff Prater testified that he never worked ten hours without pay:

Q:      So you don't know of having ever worked 10 hours off the clock at the South store do you?

A:      That's right.  I don't mind giving them a few minutes, but ten hours, no.

(Prater Depo. at 109).  Defendants argue that these deposition admissions preclude Plaintiff Prater's later inconsistent affidavit. (Defs.' Mot. to Strike at 8).  Defendants explain that Plaintiff Prater's averment that "none of the records produced in this lawsuit show any of my work hours at the South store" is inconsistent because to make such an averment, Plaintiff Prater would first have to know what days he worked at the South store. (*Id.*).

The Court agrees that paragraphs 15 and 16 of the Prater Affidavit contain inadmissible contradictions of Plaintiff Prater's prior deposition testimony.  Contrary to his deposition testimony, Plaintiff Prater alleges in his affidavit that he is claiming he worked ten-hour days

without pay at the South store. (Prater Aff. ¶ 16).  In addition, the averments indicate that he has knowledge of which days he worked at the South store.  This too is an unexplained contradiction of Plaintiff Prater's prior deposition testimony.  Accordingly, Defendants' Motion to Strike is well-taken with respect to paragraphs 15 and 16 of the Prater Affidavit.

### d.      Lack of Personal Knowledge

Defendants argue that this Court should disregard paragraph 14 of the Prater Affidavit because the figures contained therein come directly from the "Damage Calculation" that appears as Exhibit 7 to Plaintiffs' Motion for Partial Summary Judgment, an exhibit Defendants argue is inadmissible (Defs.' Mot. to Strike at 8-9).  Paragraph 14 states:

> 14.    With assistance from my counsel, I have reasonably estimated my regular hours of work for Defendants, based on my normal work schedule, and in order to determine the amount of unpaid wages I am owed by Defendants.  According to my reasonable estimate of the hours I usually worked for Defendants, I have determined that Defendants owe me unpaid regular wages in the amount of $86.26, and unpaid overtime pay in the amount of $1,435.74, without regard to liquidated damages.

(Prater Aff. ¶ 14).

For the reasons set forth *infra*, Section II.A.3, the Court agrees that Exhibit 7 is inadmissible.  Accordingly, the Court will disregard paragraph 14 of the Prater Affidavit, which is improperly based upon Exhibit 7.

### 3.      Exhibits 6 and 7

Defendants ask this Court to strike the "Damages Calculations" created by Plaintiffs' counsel and attached as Exhibits 6 and 7 to Plaintiffs' Motion for Partial Summary Judgment. (Defs.' Mot. to Strike at 9).   Defendants first argue that the exhibits do not constitute "evidence" because they are not attached to an affidavit. (*Id*.).  Second, Defendants maintain that even if the

exhibits were attached to Plaintiffs' affidavits, they would not be admissible because Plaintiffs are not competent to attest to their authenticity or accuracy. (*Id*. at 9-10). Finally, Defendants argue that to the extent Exhibits 6 and 7 purport to be summaries of records produced in this case, they fail to meet the requirements of Fed. R. Evid. 1006. (*Id.* at 10).

Plaintiffs do not contest Defendants' assertion that Exhibits 6 and 7 do not meet the requirements of Fed. R. Evid. 1006 for summaries of records, and are not admissible on that basis. (Pls.' Mem. in Opp. to Defs. Mot to Strike at 14-16). Instead, Plaintiffs argue that the "damages calculations" constitute "pedagogical devices" as that term was defined by the Sixth Circuit in *United States v. Bray*, 139 F.3d 1104 (6th Cir. 1998). (*Id*). Plaintiffs state that pedagogical devices such as the "damages calculations" may be considered for purposes of resolving a summary judgment motion. (*Id*. at 15).

In *Bray*, the Sixth Circuit distinguished Rule 1006 summaries and summaries used as pedagogical devices:

> Contents of charts or summaries admitted as evidence under Rule 1006 must fairly represent and be taken from underlying documentary proof which is too voluminous for convenient in-court examination, and they must be accurate and nonprejudicial. Such summaries or charts admitted *as evidence* under Rule 1006 are to be distinguished from summaries or charts used as pedagogical devices which organize or aid the jury's examination of testimony or documents which are themselves admitted into evidence. Such pedagogical devices "are more akin to argument than evidence.... Quite often they are used on summation." Generally, such a summary is, and should be, accompanied by a limiting instruction which informs the jury of the summary's purpose and that it does not itself constitute evidence.

*Bray*, 139 F.3d at 1111 (*quoting Gomez v. Great Lakes Steel Div., Nat'l Steel Corp.*, 803 F.2d 250, 257-58 (6th Cir. 1986). The *Bray* Court then set forth its understanding of the term "pedagogical device":

> We understand the term "pedagogical device" to mean an illustrative aid such as information presented on a chalkboard, flip chart, or drawing, and the like, that (1) is used to summarize or illustrate evidence, such as documents, recordings, or trial testimony, that has been admitted in evidence; (2) is itself not admitted into evidence; and (3) may reflect to some extent, through captions or other organizational devices or descriptions, the inferences and conclusions drawn from the underlying evidence by the summary's proponent. This type of exhibit is "'more akin to argument than evidence' since [it] organize[s] the jury's examination of testimony and documents already admitted in evidence."

*Bray,* 139 F.3d at 1111 (citations omitted). The *Bray* Court concluded that a trial court has discretionary authority to allow counsel to utilize such pedagogical devices "to clarify and simplify complex testimony or other information and evidence or to assist counsel in the presentation of argument to the court or jury." *Id.*

Defendants challenge Plaintiffs' classification of Exhibits 6 and 7 as "pedagogical devices" and further posit that pedagogical devices not admitted into evidence should not be considered at the summary judgment stage. (Defs.' Reply in Support of Mot. to Strike at 9). Finally, Defendants contend that "Exhibits 6 and 7 are incompetent even as pedagogical devices, because they do not 'summarize or illustrate evidence, such as documents, recordings, or trial testimony, that has been admitted in evidence.'" (*Id.* (*quoting Bray,* 139 F.3d at 1111)).

The Court agrees that Exhibits 6 and 7 do not qualify as "pedagogical devices" as that term was defined in *Bray.* To qualify as a pedagogical device, the Exhibits must have been based upon evidence "that has been admitted in evidence." *See Bray*, 139 F.3d at 1111. Plaintiffs assert that the damage calculations were created using: (1) Defendants' "Time Punch Change Approval Reports" for Plaintiffs; and (2) the Plaintiffs' affidavits. For the reasons discussed *supra*, the portions of Plaintiffs' affidavits upon which Exhibits 6 and 7 are based are inadmissible. Further, the exhibits are not accurate representations of the evidence. For

16

example, Plaintiff Prater's damage calculation indicates that Plaintiff Prater worked on seven

specific dates, yet there is no evidence in the record—not in the schedules, time punch records,

or even the Prater Affidavit—to support that he worked on those days.

Accordingly, this Court will not consider Exhibits 6 and 7 to Plaintiff's Motion for

Partial Summary Judgment.  Because this Court finds that Exhibits 6 and 7 do not qualify as

"pedagogical devices," the Court does not reach Defendants' other arguments in support of

disqualification.

**B.** **Plaintiffs' Motion to Strike the Affidavit of Edward Donnelly (Doc. 146)**

Plaintiffs ask the Court not to consider the March 8, 2007 Affidavit of Edward J.

Donnelly ("Donnelly Affidavit") that Defendants attached to their reply in support of their

motion for summary judgment (Doc. 144). (Pls.' Mot. to Strike at 2).  Plaintiffs argue that Fed.

R. Civ. P. 6(d) renders the Donnelly Affidavit untimely because the affidavit constitutes new

evidence that was not submitted with Defendants' Motion for Summary Judgment. (*Id*. at 2-4).

This Court disagrees.

Rule 6(d) provides in pertinent part: "When a motion is supported by affidavit, the

affidavit shall be served with the motion."  Fed. R. Civ. P. 6(d).  "Rule 6(d) is silent on when

reply affidavits must be filed."  *McGinnis v. Southeast Anesthesia Assocs.*, 161 F.R.D. 41, 42

(W.D.N.C.1995).  Where affidavits are filed in support of a reply brief, "Rule 6(d) does not

prohibit them from being filed subsequent to the motion as reply affidavits." *Id. See also*, *Peters

v. Lincoln Elec. Co*. 285 F.3d 456, 476 -477 (6th Cir. 2002) ("[R]eply affidavits that respond only

to the opposing party's brief are properly filed with the reply brief." (citations omitted)).

Consistent with *McGinnis* and *Peters*, S.D. Ohio Loc. R. 7.2(d) specifically contemplates that

rebuttal evidence may be submitted as an attachment to a reply brief: "Evidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued in memoranda opposition."

In the instant case, the Donnelly Affidavit contains four paragraphs that respond directly to allegations concerning Plaintiff Prater that were raised by Plaintiffs in their memorandum in opposition to Defendants' motion for summary judgment. Because the Donnelly Affidavit is responsive to issues raised in the Plaintiffs' memorandum in opposition, Fed. R. Civ. P. 6(d) does not render the affidavit untimely. Accordingly, the Court **DENIES** Plaintiffs' motion to strike the Donnelly Affidavit.

Having resolved these preliminary issues, the Court now turns to parties' motions for summary judgment.

**C.      Motions for Summary Judgment (Docs. 133 and 135)**

Plaintiffs, in their sole federal cause of action, assert that Defendants violated the FLSA. (*See Am. Compl.*, Doc. 43). Plaintiffs also assert state law claims under O.R.C. Chapters 4111 and 4113. (*Id.*). Finally, Plaintiffs assert claims under the common law of Ohio for fraud, breach of contract, and promissory estoppel. Defendants seek summary judgment on all causes of action and Plaintiffs seek partial summary judgment for their first, second, and third causes of action, their FLSA claim and their Ohio statutory claims. (Docs. 133 and 135). For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Partial Summary Judgment.

**1.      Standard**

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment is not appropriate if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the non-moving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[1] The Court disregards all evidence favorable to the moving party that the

---

[1] *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the non-moving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for

jury would not be required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the non-moving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257). The non-moving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the non-moving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the non-moving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

--------

summary judgment motions.

**2.      Federal Claim (FLSA)**

Plaintiffs, in their sole federal cause of action, allege that Defendants violated the FLSA.

The FLSA requires employers to pay covered employees at least the federal minimum wage for all hours worked. *See* 29 U.S.C. § 206.  In addition, overtime must be paid for all hours worked over 40 hours in a given work week. *See* 29 U.S.C. § 207.  Specifically, the FLSA provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  Thus an FLSA plaintiff "must prove by a preponderance of evidence that he or she 'performed work for which he or she was not properly compensated.'" *Myers v. Copper Cellar Corp.*, 192 F.2d 546, 551 (6th Cir. 1999) (*quoting Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-687 (1946) (brackets omitted).

In the Amended Complaint, Plaintiffs describe Defendants' alleged wrongdoings as follows:

> Defendants intentionally altered the hourly time records pertaining to Plaintiffs' actual hours of work in order to reduce the number or Plaintiffs' reported hours and in order to pay Plaintiffs less in wages and/or overtime than they were entitled to receive. Thus, Defendants wrongfully failed and refused to pay Plaintiffs all of the regular hourly wages and/or overtime wages due them.

(Am. Compl. ¶ 14).

Based upon Plaintiffs' description of Defendants' alleged wrongdoings, Defendants argue that they are entitled to summary judgment because Plaintiffs admitted in their depositions

that they have no evidence to suggest that their time records were improperly altered in any way.

(Defs.' Mot. for Summ. J. at 2-5). The Court agrees that Plaintiffs' deposition testimony

demonstrates that Plaintiffs cannot base their FLSA claims upon improper alterations to the

Plaintiffs' time punches. For example, Plaintiff O'Brien testified as follows:

> Q: . . . Do you have any personal knowledge whether your time records
> were actually altered by Ed Donnelly Enterprises or Ed Donnelly?
> A: No.
>
> * * *
>
> Q: But no one with Ed Donnelly Enterprises ever said, I've altered your
> time records?
> A: No.
> Q: You never saw anyone with Ed Donnelly Enterprises alter your time
> records?
> A: [Alter my time records?
> Q: Correct]
> Q: Other than conversations with your attorney, you never heard that your
> time records had been altered by Ed Donnelly Enterprises?
> A: [That my time records had been altered?
> A: Correct.]
> A: No.

(O'Brien Depo. at 50-51). Further, undisputed evidence shows that the corrections or alterations

made to Plaintiff O'Brien's time punches served only to *add* time to that she had reported.

(O'Brien Depo., Ex. 2; Donnelly Aff. ¶ 6).

Similarly, Plaintiff Prater's testimony demonstrates that he has no knowledge or evidence

that his time records were ever changed to reduce his actual hours of work:

> Q: Okay. Are you aware of any changes like that [managers correcting
> mistakes in time punches] that occurred that weren't accurate?

22

A: Not that I know of.

Q: And I asked the question about breaks. But with respect to your other punch-ins or punch-out, punch-ins at the beginning of the day, punch-out at the end of the day, are you aware of any changes that were made by anyone to those time punches that weren't accurate?

A: Not that I know of, no.

* * *

Q: . . . And to your knowledge, no one at the company ever went into your time records and changed them so it looked like you took an unpaid break when you actually had no break, did they?

[MS. WAFER: Same objection.]

A: Not that I know of.

* * *

Q: And if you go down to, like, this third sentence under number 14, it starts with, "Nonetheless." It says, "Nonetheless, in some cases, Defendants intentionally altered the hourly time records pertaining to Plaintiffs' actual hours of work in order to reduce the number of Plaintiffs' reported hours and in order to pay Plaintiffs less in wages and/or overtime than they were entitled to receive." Do you see that?

A: Yeah.

Q: Do you have any knowledge of anyone intentionally altering your hourly time records?

A: Not that I know of.

Q: Do you have knowledge of anyone intentionally altering anyone else's hourly time records at McDonald's?

A: No, I don't.

(Prater Depo. at 67, 77, 140-141).

Thus, Plaintiffs' own testimony demonstrates that Plaintiffs lack evidence to support that their time records were improperly altered by Defendants.

Defendants argue that because the claims pleaded in the Amended Complaint are based upon this underlying and unsupported factual allegation, that all of the pleaded claims must fail as a matter of law. (Defs.' Mot. for Summ. J. at 5).  Defendants further contend that this Court

should reject attempts by Plaintiffs to raise other arguments that were not alleged in the Amended Complaint. *Id.*  To support their contention, Defendants rely on *Wood v. Mid-America Management Corp.*, 192 Fed.Appx. 378 (6th Cir. 2006).  In *Wood*, the plaintiff alleged in the complaint that the defendant violated the FLSA by failing to pay him for all of the overtime he worked. *Id.* at 379.  At the summary judgment stage, after the evidence showed he was paid all overtime due him, the *Wood* Plaintiff attempted to recover on the basis that he was not paid at the correct wage rate. *Id.* at 381-82  The Sixth Circuit affirmed the district court's rejection of this claim as a matter of law because the *Wood* plaintiff failed to raise it in his complaint. *Id.* The Sixth Circuit explained: "Having failed to raise this contention in his complaint and having disclaimed bringing any claim other than an hours-worked claim in his deposition, Wood cannot tenably argue that the district court erred in dismissing it." *Id.* at 382.

In response, Plaintiffs argue that the Amended Complaint provides a basis for their claims that Defendants violated the FLSA by failing to pay Plaintiffs for the time they worked before being clocked in or clocked out. (Pls.' Memo. in Opp. to Defs.' Mot. for Summ. J. at 26). Based upon the language of the Amended Complaint, cited above, the Court rejects this argument.  Plaintiffs then attempt to distinguish *Wood* on the grounds that evidence regarding Defendants' failure to pay Plaintiffs for the time they worked before clocking in and after clocking out was explored and revealed during discovery. *Id.*  The Court agrees with Plaintiffs that Defendants were able to conduct discovery on Plaintiffs' alternate theory of recovery. Therefore, the question this Court must answer is whether or not Plaintiffs' failure to amend the Amended Complaint to incorporate its new theory was fatal.

Plaintiffs state that the evidence supporting their claim that Defendants did not pay

24

Plaintiffs for time worked off the clock was revealed during the discovery. *Id.* "[I]f a plaintiff decides to advance a new claim as a result of such discovery, liberal amendment of the complaint is provided for by Rule 15(a) of the Federal Rules of Civil Procedure, which states that leave to amend the complaint 'shall be freely given when justice so requires.'" *Tucker v. Union of Needletrades, Industrial and Textile Employees,* 407 F.3d 784, *788 (6th Cir. 2005). "Once a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)] and the Federal Rules are inapplicable.'" *Id.* (*quoting Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that a plaintiff could not raise a new claim in response to a summary judgment motion)) (brackets omitted). The rationale behind the rule requiring plaintiffs to amend the complaint in accordance with Rule 15(a) to assert a new claim is to prevent unfair surprise to defendants. *Id.* (*citing Guiffre v. Local Lodge No. 1124*, 1991 WL 135576, at *5 (6th Cir. 1991) (refusing to hear claims raised for the first time in opposition to summary judgment because, "[h]aving received no notice of them, the defendants had no opportunity to investigate them when they conducted their own discovery."); *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) (stating that even under the liberal notice-pleading regime, the Federal Rules of Civil Procedure still require "that the complaint give the defendant fair notice of the claim and its supporting facts")).

In the instant case, as Plaintiffs point out, the purpose behind the rule's application—to prevent unfair surprise—is inapplicable. In the Plaintiffs' depositions, Defendants did in fact question them about whether they worked off the clock. Further supporting this Court's conclusion, is that Defendants, in their summary judgment motion, addressed Plaintiffs' unpled

"off the clock" claims. Accordingly, though Plaintiffs should have amended their Complaint to incorporate their new theory of recovery, the Court will nonetheless analyze Plaintiffs' "off the clock" claims because Defendants have not been unfairly prejudiced or surprised.

Defendants assert that both Plaintiff O'Brien's and Plaintiff Prater's "off the clock" claims fail as a matter of law. (Defs.' Mot. for Summ. J. at 6, 12). In contrast, Plaintiffs assert that both Plaintiff O'Brien and Plaintiff Prater are entitled to summary judgment on their FLSA claims. (Pls.' Mot. for Partial Summ. J. at 21). The Court will consider the parties' arguments in support of summary judgment for each of the Plaintiffs in turn.

### a. Plaintiff O'Brien's "Off the Clock" Claims

By affidavit, Plaintiff O'Brien avers that she was required to report to work at 4:30 a.m. during the week, and 5:30 a.m. on Sundays, but that Defendant Donnelly instructed her not to clock in on the cash register until closer to 5:00 a.m. on weekdays and 6:00 a.m. on Sundays. (O'Brien Aff. ¶ 9). It is upon this averment that Plaintiff O'Brien bases her "off the clock" claim.

As set forth above (Section II.A.1), this Court will not consider this portion of the O'Brien Affidavit because it contradicts her prior sworn testimony. Accordingly, Plaintiffs have not created a genuine issue of fact sufficient to survive summary judgment. Defendants are therefore entitled to summary judgment on Plaintiff O'Brien's "off the clock" claims.

### b. Plaintiff Prater's "Off the Clock" Claims

Plaintiff Prater also bases his "off the clock" claims on averments made by affidavit. His claims based upon his averment that he "regularly reported" to work at 4:00 a.m. fail because

26

such claims violate the best evidence rule and contradict his prior sworn testimony. (*See* discussion *supra* at Section II.A.2.b).  Likewise, his claims that he worked "off the clock" on various dates at the South store fail because such claims are based upon attestations that contradict prior sworn testimony. (*See* discussion *supra* at Section II.A.2.c).

Finally, Plaintiff Prater bases his claims upon his recollection of a ledger he kept of his work hours, which he created from memory and which was admittedly "inexact." (Prater Depo. at 45-48).  Plaintiff Prater states that he kept a ledger in which he wrote down the hours that he worked each day, which he then compared to his daily time receipts and his pay stubs. (*Id*. at 45-50, 54).  However, he threw away his ledger and pay records in 2003.

Plaintiff Prater admits he has no independent recollection of the hours he worked.  He testified that, without his ledger, he does not know whether he worked overtime in any given week, he has no recollection of when he worked on any given day, and he has no idea how much he claims he is owed. (*Id*. at 83, 98, 137-38).  In addition, on each of the three or four occasions when Plaintiff Prater thought his pay might be short, he brought it to the attention of his manager, who said he would look into it and "take care of it" and "fix it." (*Rogan* Prater Depo. at 35, 45).  Plaintiff Prater testified that he does not know what the manager did or whether he was ever paid for the hours he thought he was short. (Prater Depo. at 57-59, 60-61, 65, 85, 134-35).  In fact, Plaintiff Prater testified that, after he raised the issue with the manager, he thought the manager took care of it. (*Rogan* Prater Depo. at 51).

The Court has ruled that Plaintiffs' attestations regarding the content of his ledger are inadmissible. (*Supra*, Section II.A.2.a).  Further, Plaintiff Prater has admitted that, as far as he knows, to the extent there was ever any shortage in his paychecks, he believes the problem was

remedied at the time it was brought to the Defendants' attention.  Accordingly, Defendants are entitled to summary judgment on Plaintiff Prater's "off the clock" claims.

### 3.     State Law Claims

The Court has granted Defendants' Motion for Summary Judgment on Plaintiffs' sole federal claim.  The Court therefore declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  It is well settled that a District Court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it possessed original jurisdiction.  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997).  Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, remaining state claims generally should be dismissed. *Id*; *Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (citations omitted); *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992).  Because there is no diversity here, no alternate basis for jurisdiction exists.  *See* 28 U.S.C. § 1332.  Therefore, pursuant to 28 U.S.C. § 1367(c)(3) and (d), the Court will dismiss Plaintiffs' state law claims against Defendants without prejudice.


### III.  CONCLUSION

For all of the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment (Doc. 133), **GRANTS** Defendants' Motion for Summary Judgment (Doc. 135)**, GRANTS** Defendants' Motion to Strike the Affidavits of Teresea O'Brien and Dallas Prater and Exhibits 6 and 7 Submitted in Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. 142), and **DENIES** Plaintiffs' Motion to Strike the Affidavit of Edward J. Donnelly (Doc. 146).

The Clerk shall enter a final judgment in this case, dismissing Plaintiff's federal claims with prejudice.

Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**.

The Clerk shall remove Documents 133, 135, 142, and 146 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases.

**IT IS SO ORDERED.**


 **/s/ George C. Smith**
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**