## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**TERESEA O'BRIEN,** *et al.***,**

        **Plaintiffs,**

                                  **Civil Action 2:04-cv-0085**

**v.**                                   **Judge George C. Smith**

                                  **Magistrate Judge E. A. Preston Deavers**

**ED DONNELLY**
**ENTERPRISES, INC.,** *et al.***, ,**

        **Defendant.**

## ORDER

This matter is before the Court for consideration of Plaintiffs' Objections (Doc. 173) to the April 29, 2010 Report and Recommendation of the Magistrate Judge (Doc. 171). In her Report and Recommendation, the Magistrate Judge recommended that the Court deny Plaintiff's Renewed Motion for Sanctions Pursuant to Rule 37 of the Federal Rules of Civil Procedure (Doc. 163). Plaintiffs filed their Objections on May 12, 2010 and Defendants responded in opposition to the Objections on May 25, 2010. For the reasons that follow, the Court **ADOPTS** the April 29, 2010 Report and Recommendation (Doc. 171) and **DENIES** Plaintiff's Renewed Motion for Sanctions (Doc. 163).

## I.  BACKGROUND

A.  Procedural History

Plaintiffs Teresa O'Brien and Dallas Prater bring this cause of action seeking the recovery of unpaid wages and overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* Plaintiffs first sought sanctions in February 2006 contending, in part, that

Defendants should be sanctioned for the loss or destruction of missing records relevant to Plaintiffs' action. Although the Court denied this motion, the United States Court of Appeals for the Sixth Circuit remanded the matter for further consideration of whether Defendants committed spoliation. *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 587–88 (6th Cir. 2009). In particular, the Sixth Circuit stated, "we reverse the district court and remand for its consideration whether it was reasonably foreseeable that the missing reports would be needed in future litigation." *Id.* at 587. The Sixth Circuit provided further guidance regarding what issues the Court should consider:

> As the district court has not yet considered whether the employer was on notice of its duty to preserve evidence before the *O'Brien* lawsuit, we do not conclude in the first instance that spoliation did take place. Rather, the district court can consider facts which could suggest that the employer should have anticipated that the missing records needed to be preserved. For instance, plaintiffs assert that within four to six weeks after buying the McDonald's stores, defendant Donnelly learned that the prior owners had been sued by a former employee who claimed she had not been paid wages due her. . . . Plaintiffs also maintain that Donnelly knew that one of his managers was changing employees' time records by inserting breaks and that one of the managers was making employees work off the clock. . . .

*Id.* at 587–88 (internal citation omitted). Finally, the Sixth Circuit instructed, "[i]f the district court concludes that spoliation did take place, the district court can consider, under its inherent authority, whether it was negligence or bad faith that motivated the defendants and relatedly, what sanction, if any, should be imposed."[1]

---

[1] Plaintiffs also maintained on appeal that Defendants were under a duty to store payroll documents electronically. Under Defendants' electronic record-keeping procedure, time punch payroll information is backed up for approximately seventy-two days. (*See* Donnelly Dep. 94.) The Sixth Circuit rejected Plaintiffs' argument that Defendants were under a duty to preserve the relevant documents in electronic form. The *O'Brien* Court reasoned, "[w]hat matters is whether the employer produces the reports in discovery, in either hard copy or electronic form." 575 F.3d at 588. Accordingly, to the extent that Plaintiffs' Objections re-assert this issue, the Court finds it unnecessary to address.

B.  Factual Background

Plaintiffs, who were both employees of Defendants' McDonald's restaurants, brought this action in February 2, 2004.  As noted above, Plaintiffs maintain that they are entitled to unpaid wages and overtime compensation under the Fair Labor Standard Act ("FLSA").  In response to discovery requests, Defendants produced numerous payroll records including general "Pay Period Reports," which demonstrate the total number of hours Plaintiffs worked in each pay period.[2] (See Pl.'s Objections 10; Defs.' Resp. to Pls.' Objections 13.)  Defendant's also produced some of Plaintiffs' "Time Punch Change Approval Reports" ("TPCA Reports"), which indicate the times employees worked each day and changes managers made to employees' hours of work.[3]  Plaintiffs maintain that these TPCA Reports are relevant to their action because they would display Defendants' improper changes to Plaintiffs' work hours.  (Pls.' Objections 27.)

Plaintiffs' Motion centers around Defendants' failure to produce certain TPCA Reports. With regard to Plaintiffs O'Brien and Prater,[4] Plaintiffs contend that twenty-seven 2002 TPCA Reports are missing.  (Pl.'s Objections 14.)  Specifically, Plaintiffs note that Defendants have not been able to produce Plaintiff O'Brien's TPCA Reports for February 27 or March 2, 2002.  (Id.) Furthermore, Plaintiff's contend that of the ninety-two days Plaintiff Prater was an employee of

---

[2] According to Defendants, they produced over 8,000 documents in discovery.  (Defs.' Resp. to Pls.' Objections 1.)

[3] Although Defendants overwrite the electronic form of the TPCA Reports, they print and store hard copies of the TPCA Reports.  (See Donnelly Dep. 95–96.)

[4] Plaintiffs brought this action on behalf of both themselves and a putative class, but the O'Brien Court affirmed this Court's decertification of the collective action.  575 F.3d at 586–87.

the Defendant, Defendants cannot account for the reports of twenty-five days from September 2002 to December 2002.

As noted above, the Sixth Circuit remanded this case for consideration of whether Defendants should have reasonably foreseen that the missing 2002 TPCA Reports would be needed in future litigation. *O'Brien* at 587–88. Plaintiffs assert that certain incidents should have placed Defendants on notice of future litigation. (Pls.' Objections 16–17.) First, Plaintiffs contend that Defendant Donnelly's knowledge of a lawsuit against the prior owner should have caused Defendants to anticipate future litigation. Specifically, at his deposition, Defendant Donnelly testified that approximately four to six weeks after acquiring the McDonald's franchises in February 2002 he gained a "brief understanding" that employees were suing the past owner because they "didn't get paid for all the hours they worked or overtime." (Donnelly Dep. 80–81.)

Additionally, Plaintiffs assert two incidents involving Defendants' employees should have led Defendants to anticipate litigation. Specifically, Chad Totche, a restaurant manager, indicated at his deposition that another manager, Dave Clark, was manipulating employees unpaid breaks and asking some employees to work off the clock. (Pls.' Objections 16–18; Toche Dep. 64–65, 76–77.) According to Mr. Totche, Defendant Donnelly was aware of the manager's conduct. (Totche Dep. 72.) Furthermore, Plaintiff notes that Defendant Donnelly was aware that another manager, Denise Runkle, altered an employees records to reduce her hours in the summer of 2002.[5] Defendant Donnelly indicates in his affidavit, attached to Defendants' Opposition to

---

[5] According to Defendant Donnelly's deposition testimony, the employee involved, Jessica West, was a minor, and Ms. Runkle had altered her time by a few minutes because Ms. West had worked later than Ohio Law allows. (Donnelly Dep. 14.)

Plaintiffs' Renewed Motion for Sanction (Doc. 167), however, that he remedied any underpayments he discovered. (Donnelly Aff. ¶ 6.) His deposition also states that Ms. Runkle was suspended for her involvement in the incident. (Donnelly Dep. 14.)

Ultimately, Plaintiffs maintain that Defendants' destruction or loss of the TCPA Reports, which they imply occurred either intentionally or negligently, constitutes spoliation. (*See, e.g.*, Pls.' Objections 28.) Plaintiffs' ask the Court for an evidentiary hearing regarding Defendants' preservation efforts; to permit an adverse inference that the lost or destroyed TPCA Reports would have been unfavorable to Defendants; and an award of Plaintiff's attorneys' fees in connection with its Motion. (*Id.*) Defendants contend that the 2002 TPCA Reports were inadvertently lost or misplaced and that under such circumstances sanctions, including the adverse inference Plaintiffs request, would be inappropriate. (Defs.' Resp. to Pls.' Objections 14–15.)

C. The Report and Recommendation

As noted above, the Magistrate Judge recommended that the Court deny Plaintiffs' Motion. The Magistrate Judge considered the circumstances that Plaintiffs maintained should have put Defendants on notice of future litigation. (Report and Recommendation 6–8.) Nevertheless, the Magistrate Judge found at the time the relevant TCPA Reports were lost or destroyed, litigation was not reasonably foreseeable to Defendants. (*Id.* at 6.) Additionally, the Magistrate Judge held in the alternative that even if Defendants should have foreseen litigation, sanctions were not appropriate in this case. (*Id.* at 8.) The Magistrate Judge found Defendants' explanation, that the TCPA Reports were inadvertently lost, to be "highly probable." (*Id.* at 9.)

D.  Plaintiffs' Objections

        In their Objections, Plaintiffs for the most part reassert the contentions which they raised

in their Renewed Motion for Sanctions.  Nevertheless, the Objections also contend that the

Magistrate Judge's Report and Recommendation is clearly erroneous because it fails to consider

the evidence Plaintiffs set forth.[6]  (*See, e.g.*, Pls.' Objections 20–21.)  Additionally, in various

portions of their Objections, Plaintiffs maintain that sanctions are appropriate, contrary to the

Magistrate Judge's findings, because Defendants had a duty under the FLSA to maintain records

and failed to meet this duty.  (Pls.' Objections 22–23.)

## II.  STANDARD

        When a party objects to a magistrate judge's report and recommendation considering a

nondispositive issue "[t]he district judge in the case must consider timely objections and modify or

set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P.

72(a); see also 28 U.S.C. § 636(b)(1)(A).  "'The 'clearly erroneous' standard applies only to

factual findings made by the Magistrate Judge, while her legal conclusions will be reviewed under

the more lenient 'contrary to law' standard.'"  *Candela Management Group, Inc. v. Taco Maker,*

*Inc.*, No. 2:08-cv-1138, 2010 WL 1253552, at *3 (S.D. Ohio March 31, 2010) (quoting *Gandee*

*v. Glaser*, 785 F.Supp. 684, 686 (S.D. Ohio 1992)).

        "A factual finding is clearly erroneous where, although there is evidence to support that

finding, the reviewing court on the entire evidence is left with the definite and firm conviction that

_____

        [6] With the exception of Plaintiffs' FLSA argument, discussed below, Plaintiffs do not
detail the specific facts that they contend the Magistrate Judge failed to consider.  Rather, Plaintiff
seems to maintain that the Magistrate Judge "disregarded or downplayed" all of the evidence
Plaintiffs submitted.  (Pls.' Objections 22.)

a mistake has been committed." *United States v. Russell*, 595 F.3d 633, 646 (6th Cir. 2010)

(quoting *United States v. Ware*, 282 F.3d 902, 907 (6th Cir. 2002)) (internal quotation omitted).

"A district court's review under the 'contrary to law' standard is plenary, and the court may set

aside any legal conclusions that 'contradict or ignore applicable precepts of law, as found in the

Constitution, statutes, or case precedent.'" *Ridenour v. Collins*, 692 F. Supp.2d 827, 829 (S.D.

Ohio 2010) (quoting *Gandee v. Glaser*, 785 F.Supp. 684, 686 (S.D.Ohio 1992)).

### III.  LEGAL ANALYSIS

A.  <u>Relevant Law</u>

The United States Court of Appeals for the Sixth Circuit remanded this case for

consideration of whether spoliation occurred, and to determine what, if any, sanctions are

appropriate.  *O'Brien*, 575 F.3d at 587–88.  As the Sixth Circuit has recognized "[s]poilation is

defined as the intentional destruction of evidence that is presumed to be unfavorable to the party

responsible for its destruction."  *U.S. v. Manns*, 277 Fed. Appx. 551, 558 (6th Cir. 2008)

(quoting *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir.2003)).  Furthermore, "the

authority to impose sanctions for spoliated evidence arises not from substantive law but, rather,

'from a court's inherent power to control the judicial process.'" *Adkins v. Wolever*, 554 F.3d 650,

652 (6th Cir. 2009) (en banc); *see also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430

(S.D.N.Y. 2004) ("The authority to sanction litigants for spoliation arises jointly under the

Federal Rules of Civil Procedure and the court's inherent powers.").  Accordingly, the Court

applies federal law when determining whether spoliation has occurred.  *Id*

As other district courts within this Circuit have held, a party seeking sanctions for

spoliation has the burden of establishing three criteria:

7

> (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the party seeking the adverse inference must show that the records were destroyed with a culpable state of mind; and (3) the party seeking the adverse inference must establish that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Johnson v. Metropolitan Gov't of Nashville*, Nos. 3:07-0979, 3:08-0031, 2010 WL 3342211, at *17 (M.D. Tenn. Aug. 24, 2010) (citing *DeBakker v. Hanger Prosthetics & Orthotics East, Inc.*, No. 3:08-CV-11, 2009 WL 5031319, at *2 (E.D.Tenn. Dec.14, 2009)). As this Court has noted, "[t]he obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*, No. 2:03-md-1565, 2009 WL 2169174, at *3 (S.D. Ohio July 16, 2009); *see also John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) ("As a general matter . . . a party to civil litigation has a duty to preserve . . . when that party has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.") (internal citation omitted).

When spoliation has occurred, the Court has the discretion to impose appropriate sanctions. *Adkins*, 554 F.3d at 653. "[A] proper spoliation sanction should serve both fairness and punitive functions." *Id.* at 652. Furthermore, the Sixth Circuit has noted that "[a]ny adverse inference from spoliation, while not entirely dependant on bad faith, is based on the spoliator's mental state." *Joostberns v. United Parcel Servs., Inc.*, 166 Fed.Appx. 783, 797 (6th Cir. 2006). There is substantial variation among federal courts regarding the appropriate mental state requirement for imposing spoliation sanctions. *See United Med. Supply Co., Inc. v. United States*, 77 Fed. Cl. 257, 266–67 (Fed. Cl. 2007) (explaining that while some federal courts require

8

bad faith for spoliation sanctions, other courts require intentional conduct, while still other courts require only some degree of fault such as negligence); *compare, e.g.*, *Nat'l Century Fin. Enters.*, 2009 WL 2169174, at *3 ("Generally, a court will not impose an adverse inference with respect to destroyed evidence, unless the party did so in bad faith."); *with Zubulake*, 229 F.R.D. at 431 ("In this circuit, a 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence.").

The United States Court of Appeals for the Sixth Circuit has not explicitly stated a required mental state for sanctions, but has recognized that "[b]ecause failures to produce relevant evidence fall 'along a continuum of fault-ranging from innocence through degrees of negligence to intentionality,' . . . the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Adkins*, 554 F.3d at 652–53 (citing *Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir.1988)). Accordingly, in this case, the Sixth Circuit remanded for the Court to consider whether, if spoliation did occur, "it was negligence or bad faith that motivated the defendants and relatedly, what sanction, if any, should be imposed." *O'Brien*, 575 F.3d at 588.

B. Foreseeability of Future Litigation

Following the Sixth Circuit's instructions, the Magistrate Judge considered whether litigation was reasonably foreseeable to Defendants at the time the relevant TPCA Reports were lost or destroyed in 2002. In finding that litigation was not reasonably foreseeable, the Magistrate Judge considered the three incidents that Plaintiffs maintain should have put Defendants on notice of likelihood of future litigation.

First, the Magistrate Judge considered Defendant Donnelly's knowledge of litigation

against previous owners.  Specifically, the Magistrate Judge concluded:

> Defendant Donnelly's knowledge of litigation involving previous owners did not
> put Defendants on notice of the likelihood of a future lawsuit.  Defendant Donnelly
> testified in his deposition that he had a "brief understanding" of the lawsuit,
> generally discerning that employees were claiming they "didn't get paid for all the
> hours they worked or overtime hours." (Donnelly Dep. 80–81.)  Plaintiff has
> presented no evidence demonstrating that the Defendants, before the current
> litigation commenced, were aware that these previous lawsuits were the result of
> time punch changes.  Consequently, the Court cannot conclude that these lawsuits
> would have put Defendants on notice of the importance of the TPCA Reports for
> future litigation.  Thus, Plaintiffs' basic assertion is that because Defendants had a
> general understanding that a former owner was involved in litigation, Defendants
> should have known that they would become involved in future litigation. Based on
> the record in this case, the Court finds Plaintiffs' assertion too tenuous to conclude
> Defendants should have reasonably anticipated this litigation.

(Report and Recommendation 7.)  The Magistrate Judge then went on to consider the incidents

involving managers Dave Clark and Denise Runkle:

> These events certainly involved managers making changes to employees' reported
> times.  Nevertheless, the Court cannot conclude that it was reasonably foreseeable
> that the missing TCPA reports would be relevant to future litigation based on these
> two incidents.  From the information Plaintiffs and Defendants have provided, it
> appears that the events involving Dave Clark and Denise Runkle were isolated
> incidents involving minor time changes and did not involve Plaintiffs in this case.
> Furthermore, Defendant Donnelly made attempts to remedy any underpayment of
> employees arising from these instances. (Donnelly Aff. ¶ 6.)  Defendant Donnelly
> also suspended Denise Runkle for her manipulation of an employee's work hours.
> (Donnelly Dep. 14–15.)  Thus, the Court can glean little reason to impute
> knowledge of future employee wage litigation to Defendants based on these two
> events.  Plaintiff has not provided evidence that these events were significant
> enough in nature for the Court to conclude that Defendants should have known
> that the relevant TPCA reports from February to December of 2002 would be
> needed in future litigation.

(Report and Recommendation 7–8.)

Contrary to Plaintiffs' assertions, the Magistrate Judge did not disregard the factual record

in reaching her conclusions regarding these incidents.  Rather, after reviewing the record, the

Court agrees with the Magistrate Judge's conclusion. First, the deposition of Defendant Donnelly, on which Plaintiffs rely to establish Defendants' knowledge of previous lawsuits, indicates only a cursory knowledge of the lawsuit against the former owner. (*See* Donnelly Dep. 78–82.) The mere fact that a former owner was being sued, without more detailed information to indicate further similarity in circumstances or potential misconduct, was not enough to put Defendants on notice of future litigation. Certainly, a reasonable manager in Defendant Donnelly's position, with or without information of this prior lawsuit, would have been aware of the *possibility* that an employee might bring a lawsuit. But this speculation is not the notice that spoliation requires. Like the Magistrate Judge, this Court finds it too tenuous to conclude that from the basic information Defendant Donnelly possessed in 2002 that he should have anticipated the TPCA Reports would be needed in future litigation.

The Court also agrees with the Magistrate Judge that the incidents involving managers Dave Clark and Denise Runkle did not put Defendants on notice of future litigation. These incidents did not involve Plaintiffs O'Brien or Prater; Defendants had no information that would put them on notice that their specific TPCA Reports would be necessary to future litigation. Furthermore, the evidence simply does not demonstrate that these incidents were serious enough to put Defendants on notice that all TPCA Reports would potentially be relevant to future litigation. Rather, the evidence supports the notion that these were two relatively isolated occurrences that Defendants corrected. Specifically, the evidence indicates that Defendants attempted to remedy any employee underpayment (Donnelly Aff. ¶ 6; Totche Dep. 74), and that offending restaurant managers were disciplined (Donnelly Dep. 14–15; *see also* Totche Dep. 73 (stating that he disciplined manager Dave Clark).) Finally, Plaintiffs have not described specific

11

employee complaints arising from these events that would have put Defendants on notice of the possibility of a future lawsuit involving managers time changes. Accordingly, the Court agrees with the Magistrate Judge's conclusion that these two incidents of employee misconduct were not enough to put Defendant on notice or make future litigation reasonably foreseeable.

## C. FLSA Duty

Plaintiffs also maintain that Defendants had a duty to preserve the TPCA Reports under the FLSA and that Defendants had knowledge of this duty.[7] (Pls.' Objections 15–16, 22–23); *see also* 29 C.F.R. § 516.6(a) (requiring employers to maintain records of "all basic time and earning cards or sheets on which are entered the daily starting and stopping time of individual employees" for a period of two years). Plaintiffs, therefore, assert that Defendants were at least negligent in losing or destroying the TPCA Reports. (*See* Pls.' Objections 26–27.)

The United States Court of Appeals for the Sixth Circuit has only recently begun applying federal law to spoliation sanctions. *See Adkins*, 554 F.3d at 652–53. Nevertheless, as another district court in this circuit has recently explained:

> While it does not appear that the Sixth Circuit has addressed this precise question, several courts, including the Seventh Circuit . . . have held that the failure to preserve evidence in violation of a regulation requiring its retention can give rise to an inference of spoliation, even if litigation involving the records is not reasonably foreseeable at the time the records are made.

*Johnson*, 2010 WL 3342211, at *18 (citing *Byrnie v. Town of Crowmwell Bd. of Educ.*, 243 F.3d 93, 109-10 (2nd Cir.2001); *see also Latimore v. Citibank Fed. Savs. Bank*, 151 F.3d 712, 716 (7th Cir.1998); *Favors v. Fisher*, 13 F.3d 1235, 1239 (8th Cir.1994); *Hicks v. Gates Rubber Co.*,

---

[7] Defendants contend that the FLSA does not require them to maintain the TPCA Reports, and that they satisfied their FLSA duties through storage of Pay Period Reports. (*See* Defs.'Resp. to Pls.' Objections 12–13.)

833 F.2d 1406, 1419 (10th Cir.1987)).

Much like normal spoliation law, federal courts applying a regulatory "duty to preserve" spoliation analysis are split on the culpable state of mind component.  *See Johnson*, 2010 WL 3342211, at *19 ("Some circuits require 'bad conduct' by the defendant, while others require only a showing that the documents were intentionally destroyed.") (citing *Keaton v. Cobb County*, 545 F. Supp. 2d 1275, 1307 n. 22 (N.D.Ga.2007)).  Nevertheless, in the regulation context, courts have generally appeared to require at least intentional destruction of records to justify an adverse inference.  *Johnson*, 2010 WL 3342211, at *19; *see also Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 383–84 (2nd Cir. 2001) ("[I]ntentional destruction satisfies the *mens rea* requirement."); *Hicks*, 833 F.2d at 1419 (allowing a presumption when the party acknowledged that records were destroyed as part of routine business).

In this case, the Magistrate Judge analyzed Defendants' state of mind with regard to the loss or destruction of the missing TPCA Reports.  As the Magistrate Judge noted, the evidence provides no indication "that Defendants acted in bad faith or with a capable mental state." (Report and Recommendation 8.)  She continued:

> In response to Plaintiffs' discovery requests Defendants provided over 8,000 documents related to payroll, including the majority of relevant TPCA Reports. Of these thousands of documents, Plaintiffs assert that twenty-seven TPCA Reports, relating to Plaintiffs O'Brien and Prater, are missing. Other than noting that these TPCA Reports are missing, Plaintiffs have provided no evidence indicating that Defendants maliciously lost or destroyed these documents. Defendants suggest that employees, in the course of performing their daily duties, inadvertently lost or discarded the TPCA Reports without any thought of future litigation, a scenario that the Court finds highly probable.

(Report and Recommendation 8–9.)

Based on its review of the record, the Court agrees with the Magistrate Judge's factual

13

analysis regarding Defendants' state of mind. Specifically, based on the evidence as a whole, it is likely that Defendants inadvertently lost these documents in the course of their normal business practices. Therefore, even assuming that Defendants did have a duty to preserve TPCA Reports under the FLSA, the Court finds that the evidence does not demonstrate a sufficiently culpable state of mind to justify an adverse inference or the other sanctions Plaintiffs request. In particular, the evidence does not indicate that the relevant documents were intentionally destroyed. Even Plaintiffs ultimately concede that the documents might have been lost.

Plaintiffs insist, however, that if Defendants lost the evidence, that loss was negligent pursuant to the FLSA, and that Plaintiffs should still be entitled to an adverse inference because of this negligence.[8] Nevertheless, although other courts of appeal have held that ordinary negligence can satisfy spoliation requirements, this Court is unwilling to extend this notion to situations, such as presented here, where the duty to preserve comes from a regulation and not reasonably foreseeable litigation. Furthermore, even assuming negligence satisfies the bare minimum requirements for the elements of spoliation, the Court has discretion in the area of sanctions to consider the circumstances of the case. Under the circumstances of this case, the Court finds that sanctioning Defendants, without greater proof of misconduct, would be inequitable. *Cf. Johnson*, 2010 WL 3342211, at *19 (refusing to find that a party acted with a culpable state of mind even when the party had intentionally destroyed the relevant documents).

---

[8] On appeal, and outside the context of their spoliation request, Plaintiffs apparently raised a similar argument, maintaining that because Defendants' records were inadequate, they only needed to satisfy a lesser inferential burden of proof for their FLSA claims. *See O'Brien*, 575 F.3d at 602. The Sixth Circuit held that although inadequate records lessen the burden on a plaintiff to show the extent of damages, a plaintiff is still required to prove by the preponderance of evidence that his or her work was improperly compensated. *Id.* at 602–03.

14

## VI.  CONCLUSION

For the above reasons, the Court **ADOPTS** the April 29, 2010 Report and

Recommendation (Doc. 171) and **DENIES** Plaintiffs' Renewed Motion for Sanctions Pursuant to

Rule 37 of the Federal Rules of Civil Procedure (Doc. 163).

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**